Tom J. Stubbs of Stubbs, McKenzie, Williams & Merrick, Kansas City, Mo., for defendant.

## MEDELLIN v. YELLOW CAB CO. OF MISSOURI.
### No. 5815.

United States District Court
W. D. Missouri, W. D.

June 23, 1951.

REEVES, Chief Judge.

This cause was tried by the court without a jury. It was an action for damages for claimed injuries accruing to the plaintiff about 8:15 on the evening of May 16, 1949, at the intersection of 12th and Vine Streets, Kansas City, Missouri. The plaintiff and his younger brother were crossing from the north side of 12th Street to the south side, where the west sidewalk of Vine Street intersects 12th Street. The plaintiff was seven years old and his brother was still younger. The younger brother was in advance, and as the plaintiff reached the north rail of the east bound car track on 12th Street he was hit by an automobile owned and operated by the defendant. He was dragged several feet before the car stopped, and he was rescued from a position under the car which hit him. The plaintiff suffered injuries to his face, head, and both legs. He had received a severe blow to the skull above his left eye which caused considerable swelling.

The plaintiff avers sundry acts of negligence on the part of the defendant through its operator, in causing the ac-

cident. Among other averments of negligence was the claimed failure of the driver of the taxicab "to keep and maintain a good and careful lookout ahead for pedestrians * * * to keep its motor vehicle under good and sufficient control * * . * to stop, slow down, or swerve its motor vehicle aside, etc." when the driver saw, or might have seen, the plaintiff in a position of peril.

The plaintiff claims damages in the sum of $25,000, and, by a second count, seeks punitive damages because he says the acts of defendant, through its operator or driver, were malicious and willful.

The defenant generally denied the averments of the complaint, and then charged contributory negligence on the part of the plaintiff.

Various. and sundry witnesses who were present at the scene of the accident, some on the south side of the street, and some on the north side, without exception testified that the plaintiff and his brother left the north side of the street for the south side in plain view, and, that, while near the center of the street, plaintiff was hit. (That plaintiff was hit by defendant's automobile is conceded.) Their evidence was that there were no cars parked or standing by reason of traffic congestion on the north side of 12th Street, being the line of travel for westbound traffic, and that the view of the approach of the plaintiff and his brother from the north side of the street was unobstructed. When plaintiff started toward the center of the street, where he was hit, defendant's taxicab was 50 or 60 feet west. And from such testimony it was apparent that the driver of the taxicab could have had a clear view of the plaintiff and his brother as they walked across the street.

After the impact, the automobile operated by the defendant's driver ran several feet before it was brought to a stop. It appeared from the undisputed testimony that traffic, both pedestrian and otherwise, was very heavy at that point at the time. The driver of the taxicab in his testimony, characterized the traffic condition as "terrific." When the accident was over many people gathered at the scene and many cars were parked at the curb, both north and south. The testimony on the part of the defendant relating to the collision was by the driver of the taxicab that hit the plaintiff and from the driver of another taxicab going in a westerly direction. The testimony of these witnesses varied as to what they actually observed, and, moreover, they were not in the same position to observe conditions as they existed as those who were either on the sidewalk or in standing automobiles, or in buildings hard by the place where the accident occurred.

The two witnesses for the defendant, on the subject of liability, said that there was a traffic congestion in respect of motor vehicles moving westwardly by stoppage. Such was not the testimony of witnesses who were at the scene. Moreover, since there was no traffic light on the Paseo, one block west, no reason appeared for traffic congestion or a stoppage of westbound traffic as intimated by witnesses for the defendant. The overwhelming preponderance of the testimony was that the driver of the defendant's taxicab was negligent, as alleged in the complaint, and that his negligence caused the collision and the consequent injuries to the plaintiff.

The next question is the amount of damages that ought to be awarded. It is claimed by the plaintiff that he sustained a brain injury, and that he has been nervous since the accident, and, furthermore, that his work in school has been greatly impeded because of a mental condition brought about by the accident. The testimony did not support this contention. It was undisputed that the plaintiff was in the hospital for a brief period, and that he was confined at home for some time. However, his work in school continued as it was before and he displayed as much intellectual vigor and power of concentration as he had before. In saying these things, it must be kept in mind that he was only seven years old when the accident occurred and was but nine years old when he testified in the case. That he received a severe

blow to the left side of his head, above his left eye, is undisputed, and that by reason of this blow he was temporarily unconscious appeared from plaintiff's evidence. He also received serious abrasions to the knees of both legs and other abrasions on his arms and about his body. Some of the physicians who testified indicated that, conceivably, his injuries might be permanent. There was no satisfactory proof that he had sustained permanent brain damage, and, at the time he testified, he appeared to be agile and alert enough. It would be speculative to say that he was permanently injured either in mind or body.

An examination of the authorities shows what has been allowed in somewhat similar cases. Within the last decade, the Kansas City Court of Appeals, in McCollum v. Shubert, 185 S.W.2d 48, loc. cit. 52, permitted a verdict for $3,750 to stand where a seven year old child was far more seriously injured than plaintiff. In that case, the jawbone was fractured without separation, his face was severely lacerated and cut, and he had bruises on his legs and forehead. In addition to that, four of his upper teeth were dislodged and had to be removed. Furthermore, he was confined to the hospital about the same length of time the plaintiff here was confined, but thereafter was under the care of physicians, dentists and dental surgeons. In addition to that, he was compelled to wear a head cast for three or four weeks, and, after the accident, was abnormally nervous and was removed from his regular schoolroom and placed in an open air schoolroom, where the amount of education was decreased and an opportunity to rest and sleep was increased. In addition to the above, he had at the time of the trial a disfiguring scar 2½ inches in length, extending from the middle of the lower lip to the chin in the midline. Other results or damages from the accident were described in the opinion. The plaintiff in this case did not suffer damages nearly so great as those suffered by the seven year old in the case cited. However, the dollar has less value now than then.

■ Under the circumstances, it would appear that an allowance of $2,250 would be proper and reasonable compensation to the plaintiff.

■ The proof did not support the second count. The driver of the taxicab did not act willfully or maliciously.